UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 13-CR-0034 (PJS/JJK) |
| Plaintiff, | |
| v. | ORDER |
| JEFFREY MANDEL FLETCHER, | |
| Defendant. | |

Jeffrey Mandel Fletcher, pro se.

Defendant Jeffrey Mandel Fletcher is serving a 120-month sentence after pleading guilty to possessing with intent to distribute cocaine base. This matter is before the Court on Fletcher's motions for release or placement on home confinement under 18 U.S.C. § 3582(c)(1)(A)(i). ECF Nos. 93, 95, 96. For the reasons that follow, Fletcher's motions are denied.

Fletcher first filed a motion under § 3582(c)(1)(A)(i) on November 25, 2020. ECF No. 93. On November 30, 2020, the Court stayed Fletcher's motion so that he could comply with § 3582(c)(1)(A), which requires Fletcher to ask the warden of his facility to "bring a motion on [his] behalf" and wait 30 days after the warden's receipt of the request before filing a motion for release in federal court. ECF No. 94 at 2.[1] The Court

---

[1] Alternatively, Fletcher could have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf,"

(continued...)

warned Fletcher that, if he failed to comply, the Court would deny his motion without prejudice for failure to exhaust administrative remedies. *Id.* at 3.

Despite being specifically warned by the Court that he needed to comply with § 3582(c)(1)(A), Fletcher did not exhaust administrative remedies. Instead, Fletcher filed another unexhausted compassionate-release request—this time, requesting transfer to home confinement, which is relief that the Court has no authority to grant[2]—along with a memorandum arguing that the exhaustion requirement should be waived.[3] ECF

---

[1](...continued)
§ 3582(c)(1)(A), but it is difficult to know why Fletcher—or any prisoner in a similar position—would choose that more time-consuming and cumbersome route.

[2]Only the Bureau of Prisons—not this Court—has authority to place Fletcher on home confinement. *See United States v. Libby*, No. 15-CR-0182 (DWF/LIB), 2021 WL 254407, at *3–4 (D. Minn. Jan. 26, 2021). Because Fletcher also requests "an order . . . releasing him from custody altogether," ECF No. 93 at 41, the Court construes both of his motions as requests for release from custody. The Court does have authority over such requests.

[3]Fletcher cites *Miller v. United States*, 453 F. Supp. 3d 1062, 1065–67 (E.D. Mich. 2020), in support of his waiver argument. In *Miller*, the defendant unsuccessfully sought release from the warden before the onset of the pandemic based on his medical conditions. After the pandemic began, he moved the court for release. The court found that exhaustion was satisfied (because the defendant had earlier asked the warden for release), futile (because the defendant's present motion was based on the same grounds that he had earlier presented to the warden), or prejudicial (due to the rapid spread of COVID-19 in his facility). *Id.* Even if this Court agreed that a judge has authority to ignore the clear mandate of the statute—and this Court does not agree—the salient factors in *Miller* are not present in this case. Fletcher has never requested release from his warden, and COVID-19 is not rapidly spreading at his institution. *Cf. United States v. Fry*, No. 11-CR-0141(4) (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020)
(continued...)

No. 96 at 2–3.  In other words, rather than simply writing a note to his warden and waiting 30 days, Fletcher has chosen to litigate the question of whether he needs to write a note to his warden and wait 30 days.

"While judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A)."[4]  *United States v. Young*, No. 18-CR-0196(2) (DWF/KMM), 2020 WL 5350295, at *3 n.9 (D. Minn. Sept. 4, 2020).  Fletcher's motions for compassionate release are therefore denied for failure to exhaust.  *See United States v. Spencer*, No. 07-

---

[3](...continued)
(noting there could be a scenario "warrant[ing] waiving this 30-day exhaustion requirement—a gravely ill inmate . . . or an immuno-suppressed individual at a facility with unchecked COVID-19 infections," but defendant did not present such a case).

Fletcher cites three more cases, all of which are also unavailing.  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), and *West v. Bergland*, 611 F.2d 710, 715 (8th Cir. 1979), both hold that exhaustion is required when mandated by statute; they *support* enforcement of the exhaustion requirement here, as § 3582 clearly mandates exhaustion.  And this Court has already rejected the argument that dicta in *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019), supports excusing the exhaustion requirement in § 3582. *See United States v. Gardner*, No. 13-CR-0035(1) (PJS/SER), 2020 WL 1867034, at *1 (D. Minn. Apr. 14, 2020).

[4]Several circuits have determined that the exhaustion requirement in § 3582 is not jurisdictional but is a mandatory claims-processing rule.  *See United States v. Sanford*, No. 20-2445, 2021 WL 236622 (7th Cir. Jan. 25, 2021); *United States v. Franco*, 973 F.3d 465 (5th Cir. 2020); *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020).  The Eighth Circuit has not yet spoken on this issue.  But whether the exhaustion requirement is jurisdictional or instead a mandatory claims-processing rule, the requirement is clearly prescribed by the text of § 3582(c)(1)(A) and must be enforced.

CR-0174(1) (JRT/JJG), 2020 WL 6119999, at *1 (D. Minn. Oct. 16, 2020) (denying motion for failure to exhaust); *United States v. Gardner*, No. 13-CR-0035(1) (PJS/SER), 2020 WL 1867034, at *1 (D. Minn. Apr. 14, 2020) (declining to reconsider denial of § 3582 motion for failure to exhaust).

Even if Fletcher had exhausted his administrative remedies, the Court would reject his motions on the merits.  Under § 3582(c)(1)(A)(i), a court may reduce a defendant's term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"  The Sentencing Commission has issued U.S.S.G. § 1B1.13, a policy statement that governs motions under § 3582(c)(1)(A).  Section 1B1.13 was issued when the Bureau of Prisons had the sole authority to bring motions for release under § 3582(c)(1)(A).  Unfortunately, § 1B1.13 has not been updated to reflect that, as a result of the 2018 First Step Act, defendants now have the ability to bring such motions directly.

This anomaly has given rise to a debate concerning whether and to what extent § 1B1.13 applies to motions filed by defendants, with several circuits recently holding that § 1B1.13 applies only to motions filed by the Bureau of Prisons, and not to motions filed by defendants on their own behalf.  *See United States v. McCoy*, 981 F.3d 271, 280–84

(4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020).  The Eighth Circuit has not yet addressed this issue.  In the absence of clarification from the Eighth Circuit, the Court will treat § 1B1.13 as providing useful guidance about how the Court should exercise its discretion under § 3582(c)(1)(A), but the Court will not treat its provisions as binding.

In arguing that "extraordinary and compelling reasons" justify his release under § 3582(c)(1)(A)(i), Fletcher provides a host of reasons why *prisoners generally* are at high risk of contracting COVID-19, *see* ECF No. 93 at 6–15, but he does not provide a single reason why *he personally* is at heightened risk of suffering severe illness or death if he were to become infected.[5]  Fletcher's presentence report ("PSR") confirms that Fletcher suffers from no health conditions that put him at heightened risk.[6]  In other words,

---

[5]Fletcher states that his "vulnerability to COVID-19 weigh[s] in favor of reducing his sentence," ECF No. 93 at 36, but he never identifies that "vulnerability."  Fletcher notes that "his medical records are in the hands of the BOP," *id.* at 37, but does not explain why he did not request copies of those records, nor does he even bother to describe his medical conditions.

[6]The PSR lists a head injury, chronic back pain, trouble sleeping, and limited lifting abilities as Fletcher's only health conditions.  PSR ¶¶ 80, 82.  Although cerebrovascular disease and neurologic conditions (such as dementia) "might" place an individual at an increased risk of severe illness from COVID-19, Fletcher's head injury stemmed from a motor-vehicle accident and does not appear to fit into either of those categories.  *See* Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, (Feb. 3, 2021)

(continued...)

every reason that Fletcher gives for why he should be released could be given by every one of the more than 1.4 million persons who are incarcerated in state and federal prisons.[7]

Fletcher does mention the spread of COVID-19 at FCI Pekin, where he is incarcerated. At present, though, COVID-19 seems to be well controlled at FCI Pekin; there are only 4 active cases among inmates and 8 active cases among staff, while 91 staff and 89 inmates have been fully vaccinated.[8] Further, since Fletcher does not suffer from any conditions that put him at a greater risk from the virus, his concern about the spread of COVID-19 at FCI Pekin "applies to literally every person who is now incarcerated" at the facility and provides no basis for his release. *United States v. Doss*, No. 15-CR-0106(4) (PJS/SER), 2020 WL 6503404, at *1 (D. Minn. Nov. 5, 2020); *see also United States v. Wright*, No. 17-CR-0301 (WMW/DTS), 2020 WL 7334412, at *5 (D. Minn. Dec. 14, 2020) ("'The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could

---

[6](...continued)
http://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; PSR ¶ 80.

[7]United States Department of Justice, Office of Justice Programs, *U.S. Imprisonment Rate at Its Lowest Since 1995*, https://www.bjs.gov/content/pub/press/p19_pr.pdf (last visited Feb. 10, 2021).

[8]Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited Feb. 10, 2021).

obtain release.'" (citation omitted)).⁹

Releasing Fletcher would also be inconsistent with the factors set forth in 18 U.S.C. § 3553. Fletcher has a long and violent criminal history, including convictions for

---

⁹At one point, Fletcher argues that the Court should not focus on "whether he can meet the requirements of 18 U.S.C. § 3582(c)(1)(A)(i)" because he is "challenging the 'fact . . . of confinement in prison,' as being a death trap infested with COVID 19," in violation of the Fifth Amendment, Eighth Amendment, and 18 U.S.C. § 4042(a)(2). ECF No. 93 at 37–41; *see also* ECF No. 95. If Fletcher is making a habeas claim, the Court rejects it. Because Fletcher's claim challenges the manner in which his sentence is being "carried out by prison authorities," rather than the "legality of the sentence[] imposed by" this Court, it is cognizable under 28 U.S.C. § 2241 (not under 28 U.S.C. § 2255) and must be filed in the district of incarceration (not the district of conviction). *United States v. Knight*, 638 F.2d 46, 47 (8th Cir. 1981) (per curiam); *see also Mohammed S. v. Tritten*, No. 20-CV-0783 (NEB/ECW), 2020 WL 2750109, at *2 (D. Minn. May 27, 2020) (detainees' request for release due to constitutional violations stemming from COVID-19 was cognizable as a § 2241 petition). The Court therefore lacks jurisdiction over this claim. *See Deardorff v. Hendrix*, No. 20-CV-01574-SEP, 2020 WL 6708521, at *1–2 (E.D. Mo. Nov. 13, 2020) (prisoner's request for release alleging spread of COVID-19 violated the Eighth Amendment was cognizable under § 2241 and must be filed in district of incarceration).

In any event, Fletcher's arguments fail on the merits. Fletcher asserts that his due-process rights were violated because his sentence was effectively transformed into a death sentence by the emergence of COVID-19. Fletcher's claim is absurd. As the Court has already explained, only 4 of the 1159 inmates at FCI Pekin are currently infected with COVID-19, and the BOP has started vaccinating staff and inmates. Fletcher is not serving a "death sentence." The Court also rejects Fletcher's claim that his facility is not providing "for [his] safekeeping, care, and subsistence" under § 4042(a)(2); to the contrary, the efforts made by the BOP to control the spread of COVID-19 at Pekin appear to have been highly effective. Finally, Fletcher's Eighth Amendment claim fails because "there is no evidence that [his facility] is unable to effectively monitor or treat him should he contract COVID-19," and no "evidence showing that [he] is at a higher risk of developing more severe symptoms from the virus in general." *United States v. Mork*, No. 17-CR-0176 (SRN/SER), 2020 WL 3026647, at *6 (D. Minn. June 5, 2020) (rejecting Eighth Amendment claim based on COVID-19).

manslaughter, theft, harassment, and lying to and fleeing from the police. PSR ¶¶ 46, 47, 49, 52, 59. Fletcher has also performed extraordinarily poorly while on supervised release. Fletcher committed the drug offense for which he is presently incarcerated while on supervised release for a prior drug offense. *Id.* ¶ 9. And then, after pleading guilty to the present offense and being released to a halfway house to await sentencing, Fletcher absconded from the halfway house, cut off his GPS bracelet, and apparently stole a vehicle. *Id.* ¶¶ 17–18. Fletcher then led law enforcement on a high-speed chase, thereby risking the lives of pursuing officers and innocent bystanders, especially when he repeatedly rammed the stolen car that he was driving into a vehicle stopped in front of him at a traffic light. *Id.* ¶ 23. When he was finally apprehended, Fletcher refused to obey the commands of officers and only surrendered when the officers broke the car window and attempted to tase him. *Id.* In light of his criminal history—including his criminal history while under supervision and even while awaiting sentencing in this very case—Court finds that granting Fletcher's motion for release would not adequately protect the public, deter Fletcher from committing further crimes, or reflect the seriousness of Fletcher's offense.[10] *See* § 3553(a)(2). Fletcher's motions for

---

[10]Fletcher argues that he poses "no risk of recidivism." ECF No. 93 at 36. That is plainly not true. Fletcher also states that "his conduct in prison weighs heavily in his favor." *Id.* Fletcher provides no evidence of any rehabilitation, but, even if he had, the Court would not grant compassionate release solely on that basis. *See* 28 U.S.C. § 994(t); *United States v. Fine*, 982 F.3d 1117, 1119 (8th Cir. 2020).

compassionate release are therefore denied.[11]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant's motions for release [ECF Nos. 93, 95, 96] are DENIED WITHOUT PREJUDICE.

Dated: February 10, 2021              s/Patrick J. Schiltz
                                      Patrick J. Schiltz
                                      United States District Judge

---

[11] Fletcher's first motion requests a range of other relief, including that the Court "[d]eclare that BOP prisons are death traps," appoint him counsel, hold a hearing, and direct the BOP to respond to his motion and provide his medical records. ECF No. 93 at 45–46. For the reasons already discussed, those requests are also denied.